IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRUBRIDGE, L.L.C, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 18-0141-CG-C |
| | ) | |
| TYRONE HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

## TEMPORARY RESTRAINING ORDER

This matter is before the court on Defendant's motion for Temporary Restraining Order ("TRO") and preliminary injunction. (Doc. 3). The Court notes that counsel for Plaintiff, TruBridge, L.L.C. would have received electronic notice of Defendant's motion yesterday when it was filed. Accordingly, counsel for all parties in this action have notice of the action and the motion for TRO and preliminary injunction. For the reasons explained below, the Court finds that the motion for TRO should be granted and that a hearing should be scheduled on the motion for preliminary injunction.

**I.  Background**

This case involves a breach of contract claim concerning a contract to provide accounts receivable management services. Defendant Tyrone Hospital ("Defendant") moves for TRO against TruBridge, LLC ("Plaintiff").

On February 10, 2016, Plaintiff and Defendant (collectively "the parties") entered into a contract ("the Agreement") for Plaintiff to provide business, managed

information technology, and consulting services to Defendant. (Doc. 1-2, p. 10). On August 9, 2016, the parties modified the Agreement by a Service Addendum ("August Service Addendum"). *Id*. at p. 42-43. In the August Service Addendum, the parties agreed Plaintiff would provide additional services, including Accounts Receivable Management Services, to Defendant for the next five (5) years. *Id*. at p. 38; 46. Accounts Receivable Management Services included, *inter alia*, "the billing of all patients, to include...the billing of all primary and secondary claims to all third party payers." *Id*. at p. 44. Furthermore, the August Service Addendum superseded all other written or oral representations between the parties. *Id*. at 38.

The parties subsequently amended the Agreement once more by a Service Addendum dated January 5, 2017 ("January Service Addendum"). *Id*. at pp. 51-53. In the January Service Addendum, the parties agreed to remove Clinic A/R from the scope of services Plaintiff was to provide to Defendant. *Id*. at p. 52. Notwithstanding the January Service Addendum, all other terms, conditions, and obligations specified in the Agreement were to remain fully in force. *Id*. at 52.

On February 22, 2018, Defendant's Chief Executive Officer, Joseph Peluso, sent a letter to Plaintiff's President and Chief Executive Officer, Christopher Fowler, advising Plaintiff that Defendant was terminating the Agreement. (Doc. 2-1, p. 2). As grounds for termination, Defendant alleged, "We recently discovered

2

that to date there are 1,061 Medicaid claims which have not been billed by TruBridge, LLC dating back to July 2017, totaling $2,278,249.20 in charges as of February 19, 2018." *Id.* Defendant claims it has made numerous attempts to resolve its issues with Plaintiff, but Plaintiff failed to timely bill claims. *Id.* Plaintiff, however, asserts it "has performed its promises under the Amended Agreement in all material respects and remains able to do so for the remainder of the contract term." (Doc. 1-1 ¶ 13). Accordingly, Plaintiff alleges Defendant breached the Agreement by renouncing its obligations and refusing to perform under the Agreement. *Id.* at ¶ 18.

In its motion for Temporary Restraining Order (TRO) and Preliminary Injunction, Defendant requests that this Court: 1) grant Defendant permission to immediately contract with another billing firm, 2) release accounts so Defendant may pursue collections on its own, 3) freeze any assets and/or accounts Plaintiff holds for Defendant, 4) order Plaintiff to remit any and all sums due to Defendant under the Agreement as such sums are received and to segregate and account for the percentage to which Plaintiff would be entitled but for its breach, 5) order Plaintiff to immediately cease and desist any and all collection activity of behalf of Defendant, 6) order Plaintiff to immediately turnover and release to Defendant any and all records of Defendant's accounts, 7) order Plaintiff to provide a complete

accounting of collections and remittances for any and all accounts placed with Plaintiff for collection, and 8) permit Defendant to rehire its former employees presently employed by Plaintiff without incurring the penalty specified in Section 7(A) of the Agreement.

## II. Legal Standard

This Court previously noted the applicable standard for preliminary injunctive relief in *Hammock ex rel. Hammock v. Keys*, 93 F. Supp.2d 1222 (S.D. Ala. 2000):

> A party seeking a preliminary injunction must establish the following four factors: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable injury; (3) that its own injury would outweigh the injury to the nonmovant; and (4) that the injunction would not disserve the public interest. *Tefel v. Reno*, 180 F.3d 1286, 1295 (11th Cir.1999); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998). The Court should be mindful that a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant has clearly satisfied the burden of persuasion as to the four requisites. *McDonald's*, 147 F.3d at 1306; *Northeastern Fl. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990).

*Id.*, at 1226-27. The same standard applies to a request for a temporary restraining order as to a request for a preliminary injunction. *Morgan Stanley DW, Inc., v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001) (citing *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995)).

## III. Analysis

**1. Substantial likelihood of success on the merits**

Defendant alleges in its verified counterclaim that Plaintiff breached the Agreement as amended by failing to perform the accounts receivable management services it agreed to provide to Defendant. (Doc. 2, p. 8, ¶ 11). Defendant alleges that, as of February 19, 2018, Plaintiff failed or refused to bill 1,061 Medicaid claims dating to July 2017 totaling $2,278,249.20 in gross charges. (*Id*). Attached to their counterclaim is a copy of a letter from Defendant's CEO to Plaintiff, dated February 22, 2108, that terminates the Agreement based on these alleged breaches and attached an "Aging Workflow Report" detailing the status of account receivables. (Doc. 2-1). Defendant also alleges in its verified counterclaim that Defendant has confirmed that Plaintiff has not billed $808,676.98 in gross charges leaving a balance due of $282,281.85. (Doc. 2, p. 8, ¶ 11). Additionally, Defendant alleges in the verified counterclaim that Plaintiff has incorrectly billed $39,344.86 in gross charges leaving a balance due of $5,045.13. (*Id*. at p. 9). The Court finds that on the facts presented, plaintiff has a substantial likelihood of prevailing on the merits.

5

## 2. Threat of irreparable injury

The Court finds that the harm risked by failure to enjoin Plaintiff is severe. Defendant asserts in its verified counterclaim that it will suffer irreparable harm because accounts will become uncollectible due to Medicaid's 180-day claim deadline from date of service for primary claims and 90-day deadline from date of remittance from primary payment for secondary claims. (Doc. 2, p. 9, ¶ 14). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (citation omitted). Here, however, Defendant alleges it is facing severe financial consequences that may render it unable to provide needed medical services to its patient population. Defendant states in its verified counterclaim that it serves a rural and medically underserved area and was approved and designated as a "Critical Access Hospital" by the Centers for Medicare/Medicaid Services in 2005. (Doc. 2, p. 8, ¶ 9).

Additionally, Plaintiff allegedly holds hundreds of thousands of dollars of Defendant's money and there is a danger that Plaintiff will spend and/or use these funds. Courts have found it appropriate to freeze assets prior to a final determination on the merits when dissipation of the funds would effectively have destroyed the pending cause of action. *Fed. Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 561 (5th Cir. 1987) (citations omitted). In the instant case, if Defendant

ultimately prevails it may have lost its ability to recover if Plaintiff is allowed to dissipate these assets. In light of the above, the Court finds that Defendant will be irreparably injured if a TRO is not entered.

**3. That its own injury would outweigh the injury to the nonmovant**

Defendant argues that it "is in a fight for its survival" and that it should not be unreasonable for Plaintiff to abide by its contractual and legal obligations. (Doc. 3, p. 11). Defendant has also stated that it is willing to secure and post a bond/surety as ordered by the Court. (Doc. 3, p. 2). Additionally, the Court will conduct a hearing on the preliminary injunction motion on Thursday and thus, the TRO will only be in place for a short time, thereby minimizing the potential harm to Plaintiff. Accordingly, the Court finds Defendant's injury is not outweighed by the injury Plaintiff might incur from entry of the requested TRO.

**4. That the injunction would not disserve the public interest**

Plaintiff asserts that an injunction is strongly in the public interest because the irreparable injury Defendant would incur if an injunction is not issued could deprive the sick, infirmed, young and old from receiving necessary medical services. The court concludes that the contemplated injunctive relief would not disserve the public interest.

## IV. CONCLUSION

After due consideration of all matters presented and in light of the foregoing, the Court finds that Defendant's motion for TRO (Doc. 3), should be and it hereby is **GRANTED**. Accordingly, the Court **ORDERS** that Plaintiff, TruBridge, L.L.C., and anyone in active concert or participation with Defendant, is hereby **ENJOINED and RESTRAINED**, as follows:

1. Plaintiff TruBridge, L.L.C. shall immediately release accounts so that Tyrone Hospital can pursue collections on its own;

2. TruBridge, L.L.C. assets/accounts that TruBridge holds for Tyrone Hospital shall be frozen;

3. TruBridge, L.L.C. shall immediately remit any and all sums due to Tyrone Hospital under the Agreement as such sums are received and to segregate and account for the percentage to which TruBridge would be entitled but for its breach;

4. TruBridge, L.L.C shall immediately cease and desist any and all collection activity on behalf or Tyrone Hospital;

5. TruBridge, L.L.C. shall immediately turnover and release to Tyrone Hospital any and all records of Tyrone Hospital's accounts; and

6. TruBridge, L.L.C. shall immediately provide a complete accounting of collections and remittances for any and all accounts placed with TruBridge for collection.

7. Defendant may immediately contract with another billing firm.

The issue of rehiring its former employees presently employed by TruBridge L.L.C without incurring the penalty specified in Section 7(A) of the Agreement will be decided after the hearing on the Preliminary Injunction.

The Court **FURTHER ORDERS** that a Preliminary Injunction hearing will be held in this matter at **9:00 a.m.** on **Thursday, March 29, 2018**, in Courtroom 2B, United States Courthouse, Mobile, Alabama. Plaintiffs shall be required to post bond in the amount of **$2,000.00.**

This TRO shall expire at 4:00 p.m. on the 6th day of April, 2018.

**DONE** and **ORDERED** this 27th day of March, 2018

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE