# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TRUBRIDGE, LLC,** | ) |
| | ) |
|     **Plaintiff/Counterclaim Defendant,** | ) |
| | ) CASE NO.: 1:18-cv-00141-CG-C |
| v. | ) |
| | ) |
| **TYRONE HOSPITAL,** | ) |
| | ) |
|     **Defendant/Counterclaim Plaintiff.** | ) |
| | ) |

## TRUBRIDGE, LLC'S REPLY TO TYRONE HOSPITAL'S RESPONSE TO MOTION TO EXCLUDE TESTIMONY OF DANIEL M. THIRY

Plaintiff/Counterclaim-Defendant TruBridge, LLC ("TruBridge") hereby respectfully submits this reply (the "Reply") to *Tyrone Hospital's Response to Motion to Exclude Testimony of Daniel M. Thiry* (Doc. 136, PageID.2311-2324) (the "Tyrone Hospital Response") filed by Defendant/Counterclaim-Plaintiff, Tyrone Hospital. For the reasons stated herein, and as previously explained in TruBridge's *Motion to Exclude Testimony of Daniel M. Thiry* (Doc. 130, PageID.2199-2217) (the "Motion to Exclude"),[1] the Report and testimony of Daniel M. Thiry, Tyrone Hospital's designated expert witness, should be excluded in full by the Court. Accordingly, TruBridge states as follows:

---

[1] Capitalized terms used but not expressly defined herein shall have the meanings ascribed to such terms in the Motion to Exclude.

{05345891.1}


I. **Thiry's Report and testimony should be excluded under Rule 37(c)(1) because his Report does not meet the requirements of Rule 26(a)(2)(B) and Tyrone Hospital has failed to meet its burden by demonstrating either that its failure to disclose was substantially justified or that the failure is harmless.**

    A. **Thiry's Report does not meet the requirements of Rule 26(a)(2)(B).**

Rule 26(a)(2)(B) requires that a witness retained to provide expert testimony[2] must provide a written report containing, *inter alia*, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." FED. R. CIV. P. 26(a)(2)(B)(i)-(ii). As explained in detail in the Motion to Exclude, Thiry's Report does not satisfy either of these requirements.

        1. **Thiry's Report does not contain a complete statement of all opinions Thiry will express and the basis and reasons for them.**

For the first requirement, Tyrone Hospital argues in its Response that Thiry's Report contains a complete statement of all opinions Thiry will express and the basis and reasons for them. However, **Tyrone Hospital's sole support for this argument is the following excerpt from Thiry's deposition testimony**:

> Q. . . . To your knowledge have you ever provided [TruBridge] a complete statement of all your opinions and the bases for those opinions?
>
> A. Yes, I believe I have.
>
> Q. Is that your preliminary report?
>
> A. Yes.

---

[2] Tyrone Hospital suggests, without arguing, that Thiry may not be subject to the disclosure requirements of Rule 26(a)(2)(B) because RCS was employed by Tyrone Hospital months before the onset of this litigation. In actuality, Tyrone Hospital disclosed Thiry as an expert retained to provide expert testimony in this litigation pursuant to Rule 26(a)(2)(B). (*See* Doc. 133, PageID.2265-2266). Moreover, Thiry testified that he is being compensated at a rate of $200 an hour specifically to review documents material to this litigation and offer opinions at trial regarding such material. (Doc. 142-1, PageID.2341-2343).

(Doc. 136, PageID.2313-2314).  As an initial matter, just because Thiry states that he believes his Preliminary Report contains a complete statement of his opinions and the bases therefore, it does not mean that his Report contains such information.  In fact, as explained more fully in the Motion to Exclude, **<u>Thiry admits in his deposition that there is nothing in his Report that explains how or why he reached his findings and conclusions</u>**.  Specifically, the Preliminary Report contains the following "findings" and "conclusions":

(1) RCS's assessment revealed and confirmed that many of the basic department functions were not performed in a timely, accurate and appropriate manner causing significant cash flow delays, unnecessary expenses and sizable reimbursement losses;

(2) the revenue cycle performance issues should have and could have been identified by most revenue cycle management leaders and immediately addressed for corrective action;

(3) in instances when negative performance trends continue for 2-3 successive months, senior management should have been notified and an immediate corrective action plan should have been implemented; and

(4) based upon RCS's review of the [Amended Agreement] when compared to the revenue cycle operational deficiencies identified in our report, it is clear that TruBridge has failed to adequately perform the essential duties required to fulfill.

(Doc. 129-2, PageID.2098).

Despite these findings and conclusions, Thiry testified that the Preliminary Report (a) does not list any of the basic department functions in the Report that were not performed in a timely, accurate, or appropriate manner; (b) does not list how those purported performance deficiencies caused significant cash-flow delays, unnecessary expenses or sizable reimbursement losses; and (c) does not identify any specific instance of TruBridge failing to perform its required duties. (Doc. 129-1, PageID.2052-2059, 2061-2064).  Simply put, as explained in the Motion to Exclude, Thiry does not provide any support for the aforementioned "findings" and "conclusions" in the

Preliminary Report, and he could not provide any support for them during his deposition. Instead, they are wholly conclusory and speculation. As a result, TruBridge does not know how or why Thiry reached any of these findings and conclusions. Further, despite Tyrone Hospital's expert disclosures indicating that Thiry will testify regarding the industry standards related to hospital revenue cycles, collections, accounts receivable, and financial health, Thiry's Report does not disclose or identify any industry standards related to hospital revenue cycles, collections, accounts receivable, and financial health.

Therefore, notwithstanding Thiry's testimony that he believes he provided a complete statement of all of his opinions and the basis for those opinions, Thiry's own testimony clearly demonstrates that the Report does not satisfy the requirements of Rule 26(a)(2)(B)(i).

> **2. Thiry's Report does not contain the data or other information considered by Thiry in forming his opinions.**

Tyrone Hospital argues that the Report contains the data or other information considered by Thiry in forming his opinion because (a) Tyrone Hospital's expert disclosures provide that Thiry reviewed eight categories of documents, including "Tyrone Hospital's Initial Disclosures" and (b) Tyrone Hospital's initial disclosures identify two documents prepared by RCS in fall 2017, specifically:

> 10. Without waiver of any objections, privileges, confidentiality, copyright protections, or other protections of proprietary information available by statute, common law or otherwise as to the entire report, that portion of the Revenue Cycle Assessment of Patient Financial Services for Tyrone Regional Health Network by Revenue Cycle Solutions – October 2017 related to the Patient Financial Services which TruBridge was responsible under its contract with Tyrone.
>
> 11. Tyrone Regional Health Network – Revenue Cycle Performance Metric Comparison by Revenue Cycle Solutions – October 2017.

(*See* Doc. 133, PageID.2266-2267; Doc. 135, PageID.2301-2310). In other words, according to Tyrone Hospital, the fact that its expert disclosures reference its initial disclosures, which, in turn,

identify two documents prepared by RCS in fall 2017, somehow means that Thiry's Report contains "the data or other information considered by [Thiry] in forming [his opinions]."

This "incorporation by reference" argument ignores the fact that Rule 26(a)(2)(B)(ii) requires the *written report* to contain the data and other information considered by an expert witness. Put another way, the inclusion of certain documents in the Initial Disclosures has no bearing on whether Thiry complied with the requirements of Rule 26(a)(2)(B), which lists the requirements that *must* be contained in an expert report. Critically, Tyrone Hospital did not produce these two documents with Thiry's Report, and Thiry's Report does not contain the data or information from these two documents.[3] Indeed, Thiry concedes in his deposition that the Report does not specify the specific data and information Thiry considered in reaching his conclusions. (Doc. 129-1, PageID.2011-2013). Even more concerning, Thiry testified that he could not recall the information and documents he reviewed in preparing the Preliminary Report and reaching his conclusions. (Doc. 129-1, PageID.2016-2017).

For these reasons, Thiry's Report fails to satisfy the requirements of Rule 26(a)(2)(B)(ii) as it does not specify the specific data and information Thiry considered in reaching his conclusions.[4]

---

[3] In fact, TruBridge is not even sure what one of these two documents is. Specifically, one of the two documents, item 10 from Tyrone Hospital's initial disclosures, appears to be a portion of the Revenue Cycle Assessment referenced in Thiry's Preliminary Report. (*See also* Doc. 129-1, PageID.2014-2015 (testifying that the Preliminary Report was essentially a three-page summary of the Revenue Cycle Assessment). However, Thiry's Preliminary Repoert does not reference a "Performance Metric Comparison", and, to undersigned's knowledge, Thiry did not mention a "Performance Metric Comparison" in his deposition.

[4] As stated in the Motion to Exclude, Thiry's Supplemental Report, like his Preliminary Report, does not specify all of the data and information used to form his conclusions. (*See* Doc. 129-1, PageID.2027-2030; Doc.129-3, PageID.2104). Tyrone Hospital apparently concedes this point as it failed to address the Supplemental Report's non-compliance with Rule 26(a)(2)(B)(ii) in its Response. TruBridge notes, however, that Tyrone Hospital attempted to produce the underlying

      **B.**    **Tyrone Hospital's failure to make the disclosures required under Rule 26(a)(2)(B) were not justified or harmless and must be excluded under Rule 37(c)(1).**

Rule 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). The advisory committee notes to Rule 26(a)(2) explain that "Rule 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any expert testimony not so disclosed." The burden is on the non-disclosing party to demonstrate either that its failure to disclose was substantially justified or that the failure is harmless, and this determination is left to the broad discretion of the lower court. *Harrison Bros. Dry Dock & Repair Yard v. Pan Agri Int'l, Inc.*, No. CIV.A. 08-0486-WS-B, 2009 WL 3273926, at *3 (S.D. Ala. Oct. 9, 2009).

Tyrone Hospital's Response provides no justification for its lack of compliance with Rule 26(a) and instead simply argues that "any deviation from Rule 26, is harmless." (Doc.136, PageID.2315). Tyrone Hospital implies that because Thiry's deposition was thorough and long, and because Tyrone Hospital had produced documentation supporting its claims and defenses and provided remote access to its electronic records, Thiry's failure to comply with Rule 26(a) is harmless. (*See id.*). The fact that Thiry was subject to a long deposition does not excuse his failure to make the required disclosures in his Report. Equally, documents produced through the discovery process do not excuse the failure of a party to comply with the requirement that an individual retained to provide expert testimony "must prepare a detailed and complete written

---

data used to prepare the Supplemental Report toward the end of Thiry's deposition. However, this production does not cure the Supplemental Report's failure to comply with Rule 26(a)(2)(B)(ii) or make the noncompliance harmless.

report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." FED. R. CIV. P. 26(a)(2) (Advisory Committee Notes 1993). Thiry's Report did not specify which of the voluminous discovery documents Thiry may have relied upon in forming his opinions. Thus, TruBridge had no way of knowing in advance of Thiry's deposition the data or other information considered in preparing his Report.

Courts have established that the failure to provide a report satisfying the requirements of Rule 26(a)(2) is harmful to the non-disclosing party, who cannot adequately prepare for the expert's deposition. *Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1413 (11th Cir. 2011). In *Walter Int'l Products*, the Eleventh Circuit Court of Appeals noted:

> The reason for requiring that an expert report be provided before a deposition is taken is so the opposing party can use the report to examine the expert at the deposition. As the district court pointed out, it is harmful to deprive opposing counsel of the expert's report before his deposition.

*Id.* (affirming a trial court's exclusion of an expert where the expert's report was so deficient that opposing party had to depose the expert "without the benefit of a report containing his opinions or records supporting his testimony"); *see also Goodbys Creek, LLC v. Arch Ins. Co.*, No. 3:07-CV-947-J-34HTS, 2009 WL 1139575, at *1 (M.D. Fla. Apr. 27, 2009) (quoting *Heed v. Binder*, 165 F.R.D. 424, 429 (D.N.J.1996)) ("An expert report is adequate when it is 'sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced.'"). As explained in the Motion to Exclude, TruBridge was harmed by Thiry's failure to provide an adequate expert report, because TruBridge was unable to review and analyze the bases for Thiry's opinions or the underlying information Thiry relied upon in reaching his conclusions in the Preliminary Report and Supplemental Report in advance of Thiry's deposition. Therefore, TruBridge was unable to fully and adequately prepare for Thiry's deposition and examine him concerning his opinions. As previously explained, TruBridge still

does not know, among other things:  (a) how or why Thiry reached any of the "findings" and "conclusions" listed in his Preliminary Report; (b) what documents and information Thiry relied on in reaching his conclusions in the Preliminary Report; or (c) what industry standards or key performance indicators Thiry may seek to discuss at trial.  Tyrone Hospital, as the non-disclosing party, has not met its burden of proving that its failure to make the disclosures required by Rule 26(a)(2) was justified or harmless.  As a result, exclusion of Thiry's Report and testimony is the necessary remedy under Rule 37(c)(1).

> II. **Thiry's Report and testimony should be excluded under Rule 702 because Tyrone Hospital has not met its burden of establishing the reliability and helpfulness of Thiry's proposed testimony regarding TruBridge's performance under the Amended Agreement and any purported damages stemming therefrom.**

The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion.  *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).  Each prong is a separate inquiry, so courts "must take care not to conflate" the three concepts.  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).  Tyrone has not established the reliability or helpfulness of Thiry's proposed testimony regarding TruBridge's performance under the Amended Agreement and any purported damages stemming therefrom as required by Rule 702.

> A. **Thiry's testimony regarding TruBridge's performance under the Amended Agreement is unreliable and will not be helpful to the jury because Thiry cannot testify how TruBridge breached the Amended Agreement.**

In its Response, Tyrone Hospital does not appear to address TruBridge's argument that Thiry's testimony regarding TruBridge's performance under the Amended Agreement is unreliable.  Instead, Tyrone Hospital simply contends that Thiry's testimony will assist the jury because the subject matter of this litigation is complex.  While TruBridge agrees that the subject matter of this litigation is complex, Thiry's proposed testimony regarding "deficiencies which

were a result of TruBridge's breach of the Amended Agreement" is unreliable and unhelpful to the jury because Thiry cannot explain how TruBridge breached the Agreement. The complexity of the subject matter of this litigation does not cure these issues.[5]

As previously explained, nowhere in Thiry's Report does Thiry explain how TruBridge breached the Amended Agreement. In fact, **Thiry testified that he cannot state what TruBridge did or did not do to breach the Amended Agreement**. (Doc. 129-1, PageID.2039-2040, 2056-2059). Instead, Thiry explained in his deposition that his opinion is simply that TruBridge somehow was in breach of the Amended Agreement because TruBridge was responsible for managing Tyrone Hospital's billing and collection processes and the amount of Tyrone Hospital's unbilled and aged A/R was in excess of industry norms at the time RCS prepared the Revenue Cycle Assessment. (Doc. 129-1, PageID.2033-2047). As explained in the Motion to Exclude, this opinion is nothing but unsupported speculation.

Thiry admits that (a) he did not analyze why the amount of Tyrone Hospital's unbilled and aged A/R existed and (b) TruBridge and Tyrone both contributed to the amount of the hospital's A/R. (Doc. 129-1, PageID.2046-2049, 2056-2057, 2060, 2084-2085). Since Thiry has not examined the cause of the unbilled and aged A/R, he should not be allowed to present expert testimony to the jury expressing his opinion that TruBridge was in breach of the Amended Agreement simply because such unbilled and aged A/R existed. Not to mention, Thiry's Report does not even explain what industry norms exist for the amount of a hospital's unbilled and aged

---

[5] In its Response, Tyrone Hospital mentions the complexities of revenue cycle management and states, for the first time, that Thiry's testimony will assist the jury in understanding these complexities. However, Tyrone Hospital never disclosed that Thiry would testify regarding this topic and, more importantly, never disclosed any of Thiry's opinions on this topic. (*See* Doc. 133, PageID.2265-2266). Thus, any attempt by Thiry to testify about the complexities of the revenue cycle management is improper under Rule 37(c)(1).

A/R or how Tyrone Hospital's A/R figures equated a breach of the Amended Agreement by TruBridge. This is exactly the type of "scientifically unsupported leap of faith" that Rule 702 is designed to preclude. *See Rider v. Sandox Pharms. Corp.,* 295 F.3d 1194, 1202 (11th Cir. 2002). Consequently, any testimony from Thiry stating that TruBridge breached the Amended Agreement is unreliable and should be excluded.

Further, such a conclusory opinion is no more than what Tyrone's counsel would be able to offer in their closing arguments at trial, and, as a result, it must be excluded because the testimony will not assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue at trial. *See* 4 WEINSTEIN'S FEDERAL EVIDENCE § 702.03[2][a]. For these reasons, Thiry's Report and testimony concerning his unsupported conclusion that TruBridge breached the Amended Agreement should be excluded under Rule 702.

      **B.**    **Thiry's testimony concerning Tyrone Hospital's damages is unreliable and will not assist the jury because Thiry cannot explain how he calculated the damages.**

Tyrone Hospital asserts that Thiry's testimony concerning Tyrone Hospital's damages is reliable because "Thiry's testimony is a matter of math. His methodology cannot be in serious dispute as it is simply arithmetic." (Doc. 136., PageID.2319). Presumably, math was involved in Thiry's damages calculation; however, the main issue with Thiry's methodology is that he cannot explain the mathematical formulas he used in calculating the damages he says Tyrone Hospital sustained as a result of TruBridge's alleged breach of the Amended Agreement. Thiry should not be allowed to testify as to these alleged damages, when he is unable to explain exactly how he calculated the damages he proposes to present to the jury.

Specifically, Thiry was unable to provide the formula or analysis used to calculate the "Account Loss Value" associated with each A/R account in his Supplemental Report. (Doc. 129-1, PageID.2081-2083). Thus, it is impossible to determine "(i) whether the theory or technique 'can be (and has been) tested,' (ii) whether it 'has been subjected to peer review and publication,' (iii) whether it has a 'known or potential rate of error,' and (iv) whether the theory or technique enjoys general acceptance in the relevant scientific community." *Deere & Co. v. FIMCO, Inc.*, 239 F. Supp. 3d 964, 982 (W.D. Ky. March 8, 2017) (quoting *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 594 (1993)). Furthermore, Thiry testified that it is uncommon to calculate "Account Loss Value," and he has never had a report similar to the Supplemental Report admitted into evidence as an expert witness. (Doc. 129-1, PageID.2087-2089). For these reasons, Thiry's Supplemental Report and associated testimony regarding damages should be excluded as unreliable under Rule 702.[6]

## CONCLUSION

For the foregoing reasons, Court should grant the Motion to Exclude and exclude Thiry's Report and testimony in its entirety.

DATED this 13th day of April, 2020.

---

[6] In addition, as explained more fully in the Motion to Exclude, the Supplemental Report and any testimony concerning damages are also unreliable and will not assist the trier of fact because, among other things, Thiry never verified the figures used in the Supplemental Report or analyzed whether TruBridge was actually responsible for the uncollected amounts used in the Report. (Doc. 129-1, PageID.2018-2026, 2065-2071, 2074-2080, 2084-2085). As a result, Thiry's opinions concerning Tyrone Hospital's purported damages resulting from TruBridge's breach of the Amended Agreement are unreliable speculation and are not an application of scientific, technical, or specialized expertise that would assist the trier of fact.

Respectfully submitted,

*/s/ J. Walton Jackson*
J. Walton Jackson     (JACKJ1045)
*wjackson@maynardcooper.com*
Evan N. Parrott        (ASB-1950O65A)
*eparrott@maynardcooper.com*

Attorneys for Plaintiff/Counter-Defendant
  TruBridge, LLC

**OF COUNSEL:**
**MAYNARD, COOPER & GALE, P.C.**
RSA Battle House Tower
11 North Water Street, Suite 24290
Mobile, Alabama  36602
(t) 251.432.0001
(f) 251.432.000

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on this 13th day of April, 2020, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will forward a copy thereof to all attorneys of record.

*/s/ J. Walton Jackson*
OF COUNSEL